

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-3-2005

# In Re: Tower Air Inc

Precedential or Non-Precedential: Precedential

Docket No. 04-3633

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"In Re: Tower Air Inc " (2005). *2005 Decisions.* Paper 626.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/626

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-3633

IN RE: TOWER AIR, INC.,

Debtor

CHARLES A. STANZIALE, in his
capacity as Chapter 7 Trustee
of Tower Air, Inc.,

Appellant

v.

MORRIS K. NACHTOMI; STEVEN L. GELBAND;
STEPHEN A. OSBORN; HENRY P. BAER;
LEO-ARTHUR KELMENSON; ELI J. SEGAL;
TERRY V. HALLCOM.

_____

On appeal from the United States District Court
for the District of Delaware
District Court No. 01-403
District Judge: The Honorable Kent A. Jordan

_____

Argued June 29, 2005

_____

Before: NYGAARD, SMITH, and FISHER, *Circuit Judges*.

(Filed:  August 3, 2005)
_____

Counsel:     John L. Reed (argued)
             Matt Neiderman
             Duane Morris LLP
             1100 North Market Street, 12th Floor
             Wilmington, Delaware 19801

             John J. Soroko
             Duane Morris LLP
             Diane E. Vuocolo
             One Liberty Place
             Philadelphia, Pennsylvania 19103
             *Attorneys for Appellants*

             Bruce E. Jameson (argued)
             Prickett, Jones & Elliot, P.A.
             1310 King Street, Box 1328
             Wilmington, Delaware 19801

             Robert M. Kaplan
             Robson Ferber Frost Chan & Essner LLP
             530 Fifth Avenue, 23rd Floor
             New York, New York 10036

             Rodney M. Zerbe
             Dechert LLP
             30 Rockefeller Plaza

New York, New York 10112

P. Gregory Schwed
Loeb & Loeb
345 Park Avenue
New York, New York 10154
*Attorneys for Appellees*

_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge*.

How far will the federal courthouse door swing open for a direct suit against corporate directors and officers for breaches of fiduciary duties?  That is the difficult question presented in this case, which pits our federal notice pleading regime against Delaware's more restrictive notice pleading requirements.  The appellant, Charles Stanziale, is the trustee of a bankrupt airline, Tower Air, Inc.  He claims that Tower Air's directors and officers drove the company into insolvency by indifference and egregious decisionmaking.  The District Court ruled that Stanziale failed to allege sufficient facts in his multi-count complaint to rebut Delaware's presumption that corporate fiduciaries act within the bounds of business judgment, which the State defines quite broadly.  We conclude that the District Court erred by applying Delaware's stricter Chancery Rule 8

-3-

pleading standard, which does not apply in federal court. Under our federal notice pleading standard, we hold that Stanziale states four claims that, if proved, would overcome the protections of Delaware's business judgment rule.

**I.**

**A. Facts**

A Delaware corporation principally operating from New York, Tower Air was founded in 1982 by defendant-appellee Morris Nachtomi as an international charter airline.[1] The company soon expanded into domestic and international scheduled passenger service, and by 1988 Tower Air's signature route, which accounted for roughly one-quarter of its revenue, was scheduled passenger service from New York to Tel Aviv. By 1999, Tower Air maintained and operated fourteen Boeing 747s and employed more than 1,400 people worldwide.

Nachtomi served as Chairman of the Board and Chief Executive Officer of Tower Air from 1989 until 2000. Nachtomi also sat as a director from 1982 until 2000, and,

---

[1]We draw the facts of this case from Stanziale's Amended Complaint. As we review the grant of a motion to dismiss, we take Stanziale's allegations to be true and construe them in the light most favorable to him. *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

except for six months in 1998, he was the company's president between 1986 and 2000. Nachtomi and his family owned a substantial majority of outstanding common stock and a controlling interest in Tower Air. As a result, the other defendant-appellees served at Nachtomi's pleasure, and Nachtomi controlled the firm's management and operations.[2]

In the mid-1990s, Tower Air hit turbulence. In 1996, the company lost twenty million dollars. Nevertheless, the company expanded its international passenger service, adding an Athens route in 1997. The next year, Tower Air added a route to Santo Domingo, Dominican Republic, because Nachtomi's daughter expressed personal interest in having the airline do so. Though that route never turned a profit, Tower Air flew to Santo Domingo until 2000. Meanwhile, Nachtomi ran Tower Air's Tel Aviv office with no oversight by the firm's other officers or directors. The Tel Aviv office kept separate financial records and its own bank account, making it virtually impossible for Tower Air's officers in New York to audit the Tel Aviv books.

---

[2]The other defendant-appellees include: Stephen Gelband, a director since 1985 and Secretary and General Counsel since 1988; Stephen Osborn, a director since 1993 and between 1988 and 1992; Henry Baer, a director since 1993; Leo-Arthur Kelmenson, a director since 1997; Eli Segal, a director since 1998; and Terry Hallcom, a director – and President and Executive Vice President for Operations – for six months in 1998.

Eventually, the Tel Aviv office accumulated significant debt, and creditors forced Tower Air's Israeli operations into liquidation.

While his airline needed cash in the late-1990s, Nachtomi cut ticket prices so low that the company would not profit on certain flights even if its planes were full. At around the same time, Nachtomi and his co-directors failed to ensure that used passenger tickets were processed for payment from credit card companies and other third parties. After Tower Air filed for bankruptcy, unprocessed tickets valued at one million dollars were found in the company's U.S. offices. Failure to process those tickets hurt Tower Air's cash flow and impeded its ability to pay creditors. Further, Tower Air's directors did nothing when, in June 1998, Nachtomi and another officer received reports from Tower Air's Director of Safety of several serious incidents earlier that year, including a ground collision involving a Tower Air plane. Apparently, no one told the directors of these reports, or of negative maintenance reports, including failure to record aircraft servicing efforts and maintenance and repair needs.

In the meantime, Tower Air's jet engines were deteriorating. At first, Tower Air cannibalized its own engines to generate spare parts. In 1998, however, Nachtomi directed that Tower Air lease or buy new engines because, at least initially, doing so would be cheaper than repairing old engines. The directors agreed at a special meeting to borrow fifty million

dollars in part to buy eight new jet engines. That meeting's minutes reflect no discussion of the need for new engines, the state of the old engines, or the financial impact of buying new engines. Later that year, the directors authorized Nachtomi to lease four new engines. Again, the board did not discuss the need for new engines, the state of the old engines, or the financial ramifications of buying and leasing versus repairing. Late in 1998, the board authorized the purchase of three new jet engines for more than eight million dollars.[3] Meanwhile, Tower Air borrowed heavily against its existing engine stock to finance operating expenses and to pay off old debt. By 2000, eleven out of nineteen of Tower Air's planes were out-of-service. By contrast, seventeen out of twenty planes were in service in 1998.

Tower Air's fiscal descent culminated in a voluntary petition for Chapter 11 relief in 2000. Stanziale was appointed trustee for the company's bankruptcy estate. He remained trustee when the bankruptcy was converted from Chapter 11 to Chapter 7 in late-2000. In June 2001, Stanziale sued Tower Air's directors and officers for monetary and punitive damages, and other relief, as Tower Air's representative and for the benefit of its creditors and other parties in interest. In October 2001, Stanziale filed the Amended Complaint before us, which, in addition to the facts recounted above, alleges that the defendants breached their fiduciary duties of loyalty, good faith,

---

[3]The Amended Complaint does not mention whether the board discussed this purchase.

and due care, grossly mismanaged Tower Air, and wasted corporate assets.

The Amended Complaint lists seven counts. *Count One* alleges that Tower Air's directors breached their fiduciary duty to act in good faith by consistently declining to repair Tower Air's older engines in lieu of leasing or buying new engines. According to the Amended Complaint, these decisions caused Tower Air to incur significant losses and merited no business judgment protection because they were taken in bad faith.[4] *Count Two* alleges that Tower Air's officers also breached their fiduciary duty to act in good faith by leasing or buying new jet engines, by failing to tell the directors about maintenance problems, and by failing to address the maintenance problems.[5] *Count Three* alleges that Tower Air's directors breached their fiduciary duty to make decisions in good faith when they approved multi-million dollar leases and purchases without consideration. Count Three also alleges that the directors failed to keep themselves adequately informed regarding the daily

---

[4]Each of the seven counts allege essentially this same theory of causation, loss, and lack of business judgment protection.

[5]The Amended Complaint alleges that, given their positions of authority at Tower Air, the officers could directly or indirectly control the company. Accordingly, the Amended Complaint alleges that the officers are liable as direct participants in, or as aiders and abettors of, the directors' breaches of fiduciary duties.

management of Tower Air by ignoring Tower Air's maintenance problems, letting Nachtomi run the Tel Aviv office independently, not reviewing Nachtomi's decision to fly the Santo Domingo route, and failing to establish management controls to ensure that used tickets were processed.

*Count Four* alleges that the officers breached their fiduciary duty to act in good faith or to keep themselves adequately informed by: failing to process used airline tickets, cutting airline fares to unprofitable levels, failing to oversee and control Tel Aviv operations, establishing and maintaining the Santo Domingo route "purely to please" Nachtomi's family, ceding all management and control to Nachtomi, failing to address operations and maintenance problems, failing to maintain jet engines, and failing to inform the board of the foregoing problems. *Count Five* repeats the allegations of Counts One to Four, and labels the acts and omissions by Tower Air's officers "gross negligence and mismanagement." *Count Six* repeats the allegations of Counts One to Five, and labels the acts and omissions by Tower Air's directors "corporate waste." *Count Seven* repeats the allegations of Counts One to Six, and labels the acts and omissions by Tower Air's officers "corporate waste."

## B. District Court Decisions

The District Court ruled that the Amended Complaint failed to state a claim in light of Delaware's business judgment

-9-

rule. In Delaware, the District Court explained, the business judgment rule is a "presumption that directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest." *Stanziale v. Nachtomi*, No. 01-403, 2004 WL 878469, at *3 (D. Del. Apr. 20, 2004). According to the District Court, a plaintiff may overcome that presumption by alleging self-dealing or by pleading "with particularity" facts showing that the challenged decision was not the result of a valid business judgment. *Id*.

Because Stanziale alleged no facts showing self-dealing, the District Court considered whether Stanziale alleged specific facts showing that the directors' and officers' actions bespoke irrationality or inattention and thus rebutted the presumption of valid business judgment. On Count One, the District Court acknowledged a "theoretical exception" to the business judgment rule for egregious decisions, but held that the purchase or lease of new engines was not so egregious that "no ordinary person of sound business judgment would believe it to be rational." *Stanziale*, 2004 WL 878469, at *3-*4 (quotation omitted). The District Court dismissed Count Two as factually deficient, concluding that the officers' alleged failure to ensure repair and maintenance of jet engines did not constitute irrationally egregious behavior. *Id*. at *4-*5.[6] Concerning

---

[6]The District Court also rejected as unsupported by authority Stanziale's allegation in Count Two that the officers breached

Count Three, the District Court conceded that liability may arise for a corporate fiduciary's inattention, but held that Stanziale failed to allege with "sufficient particularity" facts suggesting that the defendants allowed breaches of external legal requirements or consciously and intentionally acted without adequate deliberation. *Id*. at \*5-\*7. The District Court reasoned that Stanziale's list of violations in Count Four lacked facts suggesting irrationality and cited no cases suggesting that officers are liable for inattention. *Id*. at \*8. Count Five fell as "conclusory," and the District Court ruled that the officers' alleged failure to discuss the purchase or lease of engines did not constitute "unintelligent and unadvised" decisionmaking. *Id*. The District Court held that Stanziale alleged no facts in Counts Six and Seven suggesting that Tower Air failed to receive adequate consideration for its transactions, and thus failed to allege waste. "[C]onclusory allegations are not sufficient to overcome the protections of the business judgment rule," the District Court stressed. *Id*. at \*9.

Stanziale moved for re-argument on the ground that the District Court erroneously enforced the heightened factual pleading standard required in shareholder derivative actions by Federal Rule of Civil Procedure 23.1. Though conceding that this was not a derivative suit, the District Court denied the motion. "[W]hat Plaintiff evidently fails to comprehend is that

---

their fiduciary duty by failing to tell the directors about maintenance problems.

-11-

the business judgment rule applies to this case," the District Court declared, "and [that] means that Plaintiff was required to rebut the presumption of that rule with well-pleaded facts, not conclusory allegations." *Stanziale v. Nachtomi*, No. 01-403, 2004 WL 1812705, *2 (D. Del. Aug. 6, 2004). Well-pleaded facts under Rule 12(b)(6), the District Court explained, are "specific." *Id*. (quoting *Grobow v. Perot*, 539 A.2d 180, 188 n.6 (Del. 1988) ("Even under the less stringent standard of a [Rule 12(b)(6)] motion to dismiss, all facts of the pleadings and reasonable inferences to be drawn therefrom are accepted as true, but neither inferences nor conclusions of fact unsupported by allegations of specific facts upon which the inferences or conclusions rest are accepted as true.") and *In re RSL Com Primecall, Inc*., 2003 WL 22989669 (Bankr. S.D.N.Y. Dec. 11, 2003) ("absent well pleaded allegations of specific acts of self-dealing or even bad faith, Plaintiffs cannot overcome the presumption afforded by the business judgment rule . . . .")). Lacking such specific facts, the District Court ruled that Stanziale's complaint merited dismissal. Stanziale asks us to reverse the District Court on only Counts One through Five.[7]

---

[7]The District Court exercised jurisdiction under 28 U.S.C. § 1334(b), which provides federal courts subject matter jurisdiction over civil proceedings related to bankruptcy cases. We have jurisdiction over the District Court's order dismissing Stanziale's Amended Complaint under 28 U.S.C. § 1291. We also have jurisdiction over the District Court's denial of Stanziale's motion for re-argument because the orders are

-12-

## II. Analysis

### A. Federal Pleading Standard

Stanziale insists on appeal that the District Court applied the elevated federal pleading standard controlling shareholder derivative suits.[8] We acknowledge some language in the District Court's opinions that evokes the derivative suit standard, but we think the better reading is that the District Court applied Delaware's Chancery Rule 8. Applying Chancery Rule 8 in federal court makes some intuitive sense, as the language of Chancery Rule 8 mirrors Rule 8 of the Federal

---

integrally connected, Stanziale expressly appealed both orders, and the directors and officers briefed the issues raised in both orders. *Cf. Williams v. Guzzardi*, 875 F.2d 46, 49 (3d Cir. 1989) ("We have appellate jurisdiction over orders not specified in the notice of appeal if there is a connection between the specified and unspecified order, the intention to appeal the unspecified order is apparent and the party is not prejudiced and has a full opportunity to brief the issues.").

We consider de novo the grant of a motion to dismiss for failure to state a claim. *Wheeler v. Hampton Twp.*, 399 F.3d 238, 242 (3d Cir. 2005). While denial of a motion for reconsideration is discretionary, where, as here, that denial interprets and applies a legal precept, our review is plenary. *Le v. University of Pennsylvania*, 321 F.3d 403, 405-06 (3d Cir. 2003).

[8]*See* Fed. R. Civ. P. 23.1 ("The complaint shall . . . allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort.").

Rules of Civil Procedure.[9]  The problem is that Delaware courts interpret Chancery Rule 8 to require pleading facts with specificity.  That is not the federal notice pleading standard.

Delaware cases are legion requiring specific allegations of fact to support a plaintiff's demand for relief under Chancery Rule 8.  In *Grobow v. Perot*, the Delaware Supreme Court stated that even under Chancery Rule 12(b)(6) conclusions of fact will be rejected if not supported by allegations of "specific facts." 539 A.2d at 187 n.6.  The Delaware Supreme Court reiterated that maxim in *In re Tri-Star Pictures, Inc., Litig*., 634 A.2d 319, 326 (Del. 1993), and the Court of Chancery continues routinely to apply it.  *See, e.g., Crescent/Mach I Partners L.P. v. Turner*, 846 A.2d 963, 984 (Del. Ch. 2000).  We recognize that the District Court (mistakenly) cited derivative suit pleading cases at times, especially in its first memorandum.[10]  However, the District Court drew more heavily from Chancery Rule 8 precedents, and it expressly relied on that Rule alone.  Reading its opinions as a whole, we think it fairest to take the District Court on its own terms.  We conclude that the District Court applied Chancery Rule 8, not Rule 23.1, and then imputed

---

[9]*Compare* Del. Ch. Ct. R. 8 ("A pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . .") *with* Fed. R. Civ. P. 8 ("A pleading which sets forth a claim for relief . . .  shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . .").

[10]Citing *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), a classic Delaware derivative case, for its pleading standards was such an error, as was citing *In re RSL Primecall, Inc*., which relied on *Aronson*.

-14-

Chancery Rule 8's requirements to Federal Rule of Civil Procedure 8.

Delaware courts consider Chancery Rule 8 specificity requirements as consonant with notice pleading, *see, e.g., Salomon v. Pathe Communications Corp.*, 672 A.2d 35, 39 (Del. 1996), but such notice pleading bears scant resemblance to the federal species. For example, we recently rejected an appellee's argument that a complaint "lacked sufficient factual support" with the terse declaration that "a plaintiff need not plead facts." *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004). We explained that instead "a plaintiff need only make out a claim upon which relief can be granted. If more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of the civil discovery mechanisms under the Federal Rules." *Id*. We held that the District Court erred by mandating fact-pleading under Rule 12(b)(6), and we vacated and remanded its decision. As we explained, we merely submitted to the Supreme Court's reminder in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), the essence of which it recently reiterated in *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002), that the Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." 507 U.S. at 168 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The District Court erred by assuming that Delaware's notice pleading cases are interchangeable with federal notice pleading cases.[11] They are not. By requiring Stanziale to allege

<hr />

[11]We take it as a commonplace that under *Hanna v. Plumer*, 380 U.S. 460 (1965), federal pleading standards apply in federal

specific facts, the District Court erroneously preempted discovery on certain claims by imposing a heightened pleading standard not required by Federal Rule of Civil Procedure 8.

What should the District Court have required Stanziale to allege? First, regarding facts, the Supreme Court in *Swierkiewicz* illustrated the "simplicity and brevity" of factual allegations required under Rule 8. The Court endorsed Form 9 of the Federal Rules of Civil Procedure Forms, which sets forth an illustrative complaint of negligence: "On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway." 534 U.S. at 513 n.7. Notably, this example provides a few facts; the claim does not merely state that "defendant negligently injured plaintiff." The lesson, as we take it, is that supporting facts should be alleged, but only those necessary to provide the defendant fair notice of the plaintiff's claim and the "grounds upon which it rests." *Conley*, 355 U.S. at 47. That proposition is not inimical to our teaching in *Alston* that facts need not be pleaded. A plaintiff should plead basic facts, such as they are, for those are "the

---

court. *See Ingersoll-Rand Fin. Corp.*, 921 F.2d 497, 501 (3d Cir. 1990) ("Since [plaintiff's] action was brought in federal court, the Federal Rules of Civil Procedure govern the sufficiency of the pleadings."); *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125 (3d Cir. 2002) (noting that under *Hanna* "federal courts apply on-point Federal Rules of Civil Procedure instead of state procedural practices"). *See also* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004) ("Federal law governs whether a complaint in a federal court action states a claim for relief with the requisite particularity.").

grounds" upon which the plaintiff's claim rests. Even at the pleading stage, a defendant deserves fair notice of the general factual background for the plaintiff's claims. *Id.* But, as we explained in *Alston* and reiterate today, a plaintiff will not be thrown out of court on a Rule 12(b)(6) motion for lack of detailed facts. To say that a plaintiff's claim appears factually weak is not to say that he states no claim. That truism is particularly obvious where, as here, a defendant's motion to dismiss articulates the plaintiff's claims that supposedly lack factual support. *See Alston*, 363 F.3d at 234. To hold otherwise would be effectively to transform Rule 12(b)(6) motions into multi-purpose summary judgment vehicles. That we will not do.

Second, Stanziale must plead around the business judgment rule. In Delaware, the business judgment rule is a presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company. *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984).[12] Generally speaking, we will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6). *See In re Adams Golf Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2000). A complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face, however. *ALA, Inc. v.*

---

[12]The parties on appeal treat both directors and officers as comparable fiduciaries, and they appear to be correct in doing so. *See Arnold v. Soc'y for Savings Bancorp, Inc.*, 678 A.2d 533, 539 (Del. 1996) ("Fiduciary duties are owed by the directors and officers to the corporation and its stockholders."). Unless stated otherwise, we therefore will assume for the purposes of this case that theories of liability against corporate directors apply equally to corporate officers.

*CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994). Stanziale's Amended Complaint declares that the business judgment rule does not vitiate any of his claims. He thus must plead that he overcomes the presumption created by that rule – that Tower Air's directors and officers acted in good faith and on an informed basis. *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 286 (Del. Ch. 2003).

Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task. Delaware courts have said that it may be accomplished by showing either irrationality or inattention. A plaintiff may overcome the presumption that directors and officers acted in *good faith* by establishing that a decision was so egregious as to constitute corporate waste. *Gagliardi v. Trifoods Int'l, Inc.*, 683 A.2d 1049, 1053 (Del. Ch. 1996) (Allen, Ch.). The burden here is to show irrationality: a plaintiff must demonstrate that no reasonable business person could possibly authorize the action in good faith. *Id.* at 1054. Put positively, the decision must go so far beyond the bounds of reasonable business judgment that its only explanation is bad faith. *Parnes v. Bally Entm't Corp.*, 722 A.2d 1243, 1246 (Del. 1999) (en banc). Alternatively, a plaintiff may overcome the presumption that directors and officers acted on an *informed basis* by establishing that a decision was the product of an irrational process *or* that directors failed to establish an information and reporting system reasonably designed to provide the senior management and the board with information regarding the corporation's legal compliance and business performance, resulting in liability. *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967-70

(Del. Ch. 1996) (Allen, Ch.).[13] Viewing these methods along a different axis, action may lead to liability where the action or the process that led to it were irrational; inaction may lead to liability where no red flag monitoring system is installed and non-compliance with applicable legal standards results.

## B. Application of Federal Pleading Standard

In view of the foregoing, the question for this Court is whether Stanziale's Amended Complaint sets out a simple and brief statement of claims of irrationality or inattention and gives the directors and officers fair notice of the grounds of those claims. "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim[s] which would entitle him to relief," *Conley*, 355 U.S. at 45-46, we must reverse the District Court.

## Count One: Irrationality – Directors

Even under notice pleading standards, Stanziale's claim

---

[13]For simplicity's sake we have characterized this as a method of overcoming the presumption of the business judgment rule. We acknowledge that "technically speaking, [the rule] has no role where directors have either abdicated their functions, or absent a conscious decision, failed to act." *Aronson*, 473 A.2d at 813. Therefore, it is more accurate to say that successfully alleging inattention *circumvents* the business judgment rule. *But see In re The Walt Disney Co.*, 825 A.2d at 286 ("Plaintiffs may rebut the presumption that the board's decision is entitled to deference [under the business judgment rule] by raising a reason to doubt whether the board's action was taken on an informed basis . . . .").

that Tower Air's directors breached their duty to act in good faith by declining to repair Tower Air's jet engines and instead replacing them with new engines must fail. We consider that an allegation of a classic exercise of business judgment because a reasonable business person could have reached that decision in good faith. *See Gagliardi*, 683 A.2d at 1053. Certainly, bad faith is not the only possible explanation for the decision. *See Parnes*, 722 A.2d at 1246. Moreover, the Amended Complaint states that Nachtomi charted this course "because the initial payment was lower than the money needed for repair of the disabled engines which [Tower Air] already owned." We earlier stressed that we will not dismiss a complaint for lack of detailed facts. The problem here, though, is not the facts that are not pleaded, but the facts that are. It seems to us that a complaint is self-defeating when it states an ostensibly legitimate business purpose for an allegedly egregious decision. *Cf. Grobow*, 539 A.2d at 190. Given his concession, it appears to us that Stanziale can prove no set of facts consistent with his claim – that buying and leasing engines rather than repairing them was an egregious decision – that would entitle him to relief. We thus will affirm the District Court on this Count.

### Count Two: Irrationality/Inattention – Officers

In Count Two, Stanziale alleges that Tower Air's officers did nothing when they were told by the corporate Director of Safety of quality assurance problems with aircraft maintenance and of failures to record maintenance and repair work. Whether the officers' behavior is construed as an egregious decision or as unconsidered inaction, that allegation is troubling. Under no circumstances should aircraft maintenance problems be ignored. Lives are on the line. Yet, the District Court dismissed Count

-20-

Two on the ground that Stanziale alleged "no facts that would characterize [the officers'] actions as egregious." We can imagine few things *more* egregious. The officers' alleged passivity in the face of negative maintenance reports seems so far beyond the bounds of reasonable business judgment that its only explanation is bad faith. *See Parnes*, 722 A.2d at 1246. Accordingly, we will reverse the District Court on this Count.[14]

**Count Three: Inattention – Directors**

We understand Stanziale here to allege two forms of inattention: first, that the directors employed an irrational decisionmaking process in approving multi-million dollar leases of jet engines; and, second, that the board failed in good faith to install a legal compliance and business performance monitoring system. The District Court appeared to wrestle with the first allegation, but we do not think it presents a close question. We conclude that Stanziale plainly states a claim of inattention on the first ground, and therefore we need not reach the second ground.

Stanziale argues on appeal that the directors' alleged rubber-stamping of major capital expenditures is consistent with bad faith. We agree. *In re Caremark* instructs that a "good faith effort to be informed and exercise judgment" is the core duty of

---

[14]We are less sure whether the officers' alleged failure to report maintenance problems to the directors, or their alleged failure to advise the directors concerning the long-term financial ramifications of the failure to maintain the engines, constitutes irrationality or inattention. We need not reach this question, however, as we reverse the District Court on Count Two on other grounds.

care inquiry. 698 A.2d at 967. Applying this standard, the Court of Chancery recently held that a plaintiff stated a claim by pleading that directors "consciously and intentionally" disregarded their responsibilities and adopted a "we don't care about the risks" attitude regarding a material corporate decision – hiring a new president. *In re The Walt Disney Co.*, 825 A.2d at 289. Stanziale alleges that the directors' inattention when writing multi-million dollar checks was "intentional, willful . . . and malicious." The grounds of his claim are that board minutes reflect that the aircraft engine outlays were made with no discussion. That is enough to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The directors are on notice of the claim, which is cognizable in Delaware, and the grounds upon which it rests. We of course offer no opinion on whether a corporate board signing large checks without comment constitutes a "we don't care attitude," for that is not our mandate. It appears to us possible that Stanziale may prove a set of facts consistent with his claim of irrational decisionmaking, and so dismissal was unwarranted.

We recognize the apparent tension between allowing Stanziale to go forward with this claim while we hold in Count One that the terms of the decision at issue were not irrational, but that is simply Delaware law as we understand it. In Delaware, the merits of a business decision are considered separately from the process used to reach that decision. In *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) (en banc), for example, the Delaware Supreme Court emphasized that "[d]ue care in the decisionmaking context is *process* due care only." *Id*. at 264 (emphasis in original). Substantive review of business decisions, the Court explained, instead is effected when decisions are tested for bad faith or waste. *Id*.; *see also id.* at

-22-

264 n.66 ("directors' decisions will be respected by courts unless the directors . . . do not act in good faith, act in a manner that cannot be attributed to a rational business purpose *or* reach their decision by a grossly negligent process that includes the failure to consider all material facts reasonably available.") (emphasis added).[15]   We infer from this language that an unsuccessful attack on an allegedly egregious decision does not preclude an attack on the process used to reach that decision.  At all events, we believe it would be premature to order dismissal of Count Three on the basis of a connection that the parties have not briefed and that the Supreme Court of Delaware appears to reject.   We thus conclude that our decision on this Count accords with our decision on Count One.  We hold that the District Court erred in ruling that Stanziale did not allege facts in Count Three showing conscious disregard "with sufficient particularity," and we will reverse.[16]

---

[15]*See also Crescent/Mach I Partners L.P.*, 846 A.2d at 986 ("I conclude that the director defendants met their duty of care by informing themselves adequately and that the real focus of this case is scrutiny of their actions in terms of an alleged lack of good faith . . . .").

[16]Stanziale's second allegation, that the board breached its duty to install a corporate monitoring and reporting system to signal the officers and directors regarding the corporation's legal compliance and its business performance, poses an important question that will have to wait for another day.  The question revolves around *In re Caremark*, which states that directors will be liable for ignorance of "liability creating activities" only where the board's failure to exercise oversight is "sustained or systemic."  698 A.2d at 971.  The parties vigorously dispute whether "liability creating activities" refers to lack of directorial due care, or the corporation's breach of external law.  The

## Count Four: Irrational Action/Inaction – Officers

Taking together Stanziale's list in this Count of allegedly egregious managerial decisions, we conclude that he states a claim.[17]  Especially troubling is the allegation that the officers failed to process used airline tickets worth one million dollars. If proved, that might constitute gross negligence – but then, by definition, the only explanation for the failure is not bad faith. *See Parnes*, 722 A.2d at 1246.  The allegation that Tower Air's Santo Domingo Route was established and maintained "purely to please" Nachtomi's family, however, seems explicable only by bad faith.  We rely here on *Parnes*, wherein the Court of Chancery held that a plaintiff stated a claim under Chancery Rule 12(b)(6) when he alleged that a corporate chairman and CEO premised his consent for a merger on a bribe. *Parnes*, 722 A.3d at 1246-47.  The Court concluded that independent directors could not have approved such a deal in good faith. *Id*. We think no reasonable business person acting in good faith could possibly authorize creating and maintaining an

District Court ultimately avoided that question, holding that no "sustained or systemic" inattention was alleged.  As we hold that Stanziale has stated a claim of inattention on other grounds, we need not resolve this dispute, although we wonder how, given the extent of the allegations in Count Four, Stanziale could be said to have failed to allege "sustained or systemic" inattention on the part of the directors.

[17]Some items on this list admittedly seem to constitute garden variety business judgments.  Cutting fares unprofitably and expanding international routes in the midst of a business downturn would seem to fall into that category.  We leave to the District Court the appropriate characterization of such items, recognizing that factual development may aid the inquiry.

unprofitable airline route for years solely to keep his daughter happy. A desire for familial harmony is not synonymous with reasoned business judgment. It appears in light of the Santo Domingo allegation that Stanziale may be able to prove a set of facts consistent with his claim that Tower Air's officers acted irrationally. As the District Court incorrectly dismissed this Count as factually deficient, we will reverse.[18]

### Count Five: Gross Negligence and Mismanagement – Officers

Gross negligence in Delaware appears to be synonymous with engaging in an irrational decisionmaking process. *See Brehm*, 746 A.2d at 264 ("[D]irectors must consider all material information reasonably available, and [their] process is actionable only if grossly negligent."); *see also McMullin v. Beran*, 765 A.2d 910, 922 (Del. 2000) (citing, inter alia, *Aronson*, 473 A.2d at 812).[19] Gross negligence is not a theory

---

[18]Stanziale may also allege inattention in Count Four. He seems to maintain that the officers' failure to process used airline tickets, failure to oversee Tower Air's Tel Aviv operations, ceding of all management responsibilities to Nachtomi, and failing to maintain jet engines were products of an irrational decision-making process. The District Court noted that Stanziale cited no authority for holding officers liable for inattention. While Stanziale has cited no such authority on appeal, either, we do not reach this question as we reverse the District Court on Count Four on other grounds.

[19]We acknowledge that on remand in *Brehm* the Court of Chancery appeared to require the plaintiffs in that case to plead more than gross negligence. *In re The Walt Disney Co.*, 825 A.2d at 278 (noting that "[i]t is rare when a court imposes

-25-

of liability applicable to the merits of business decisions.  *See Brehm*, 746 A.2d at 264.  Accordingly, it seems to us that by alleging gross negligence Stanziale restates in Count Five the identical theory of liability – an irrational decisionmaking process – on which he at least partially predicated Counts Two, Three, and Four.  It is tempting to affirm the District Court's dismissal of this Count to excise this apparent redundancy.  Nevertheless, we think Stanziale deserves the opportunity to refine his theories of liability on remand with the aid of discovery.  It is still early in this litigation.  It may be that the adversarial process in its later stages elicits refinements in the concepts of gross negligence in Delaware that the parties have not yet uncovered, focused as they have been on pleading standards.  Having determined that Stanziale successfully stated claims in Counts Two, Three, and Four, we now hold that Stanziale has stated a claim in Count Five.  We will reverse the District Court on this Count.

## C.  Exculpatory Charter Provision

Apparently for the first time on appeal, the directors and officers argue that Tower Air's certificate of incorporation contained an exculpatory charter provision established pursuant to 8 Del. C. § 102(b)(7) (authorizing a certificate of

---

liability on directors of a corporation for a breach of the duty of care . . , [b]ut the facts alleged in the complaint do not implicate merely negligent or grossly negligent decision making by corporate directors).  *Cf. In re Caremark*, 698 A.2d at 967 n.16 ("The vocabulary of negligence while often employed, e.g., [in *Aronson*], is not well suited to judicial review of board attentiveness . . . .").  So long as the Supreme Court of Delaware uses the term, however, we will.

incorporation to contain "[a] provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director . . . ."). Neither of the District Court's opinions mentions this issue. We decline to address it today because "we generally decline to address arguments for the first time on appeal," *Lauderbaugh v. Hopewell Twp*., 319 F.3d 568, 574 (3d Cir. 2003), and because the protection of an exculpatory charter provision appears to be in the nature of an affirmative defense. As we have said, affirmative defenses generally will not form the basis for dismissal under Rule 12(b)(6). *See In re Adams Golf Inc. Sec. Litig*., 381 F.3d at 277.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court as to Counts One, Six, and Seven, and reverse the judgment of the District Court as to Counts Two through Five.

-27-